FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 02, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN DUDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF WASHINGTON; WASHINGTON STATE DEPARTMENT OF CORRECTIONS; and WASHINGTON STATE REFORMATORY,<br><br>    Defendants. | No. 4:23-CV-05047-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On December 16, 2024, the Court held a motion hearing in this matter via videoconference. Plaintiff was represented by Harold Franklin, Jr. Defendants were represented by Laura Morse.

At the hearing, the Court considered Defendants' Motion for Summary Judgment, ECF No. 14. After reviewing the briefs, caselaw, record, and hearing the arguments from both parties, the Court **granted** the Motion.

//

//

//

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

# BACKGROUND

This case was filed in the Walla Walla Superior Court on January 12, 2023. Defendants timely removed the case to the U.S. District Court for the Eastern District of Washington on April 10, 2023, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441. Against all Defendants, Plaintiff brings claims for violations of Title VII under 42 U.S.C. § 2000e, and a violation of the Washington Law Against Discrimination ("WLAD") under Wash. Rev. Code § 49.60.030.

On August 9, 2021, the Washington State governor passed Proclamation 21–14 requiring all employees of state agencies to obtain a COVID-19 vaccination or face termination, absent an approved religious or medical accommodation. The State Agency Vaccination Accommodation Guidelines confirmed that "safety measures in worksites that included PPE, distancing, testing, and other interventions were not stopping the spread of COVID-19."[1]

Plaintiff worked as a Correction Specialist 3 in the re-entry division, maximum-security units at the Washington State Penitentiary in Walla Walla, Washington. His office had a door and window next to open-air cubicles for staff. Plaintiff's job required he work with the Department of Corrections Aggression Replacement Training ("DOCAR") program, which involved high security inmates in the West Complex and Intensive Management Unit. About 30 percent of his job involved teaching the inmates and managing staff on the program. The program utilized slide shows for the training, but the unit did not have internet access because inmates in the unit were not allowed to go online. His position description stated:

---

[1] *Washington State Agency Vaccination Accommodation Guidelines*, Wash. Pub. Empls. Ass'n (issued August 27, 2021), https://www.wpea.org/uploads/7/0/4/9/70496281/vaccination_accommodation_matrix_v1_final_8-27-21__002_.pdf

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 2

The Reentry Division is responsible for the Implementation of evidenced-based practices and the operational support to facilitate incarcerated Individuals' participation in and/or to provide evidence-based and research based interventions and promising practices/programs designed to decrease recidivism, while increasing the safety of staff, participants, incarcerated individuals and the public.

The Department of Corrections, in collaboration with its criminal justice partners, will contribute to staff and community safety and hold incarcerated individuals accountable by conducting appropriate screenings, assessments and evaluations to assess the risk and needs of the population and by providing services to address the risks and needs across the continuum in the least restrictive setting needed to ensure protection of staff, participant, incarcerated individuals and the public. Participants will be held accountable through the classification system and the administration of sanctions and reinforcers to effect change.

This position contributes to the Department's mission and vision by providing supervision, expertise and technical assistance to ensure delivery of Cognitive Behavioral Interventions in alignment with evidence-based practices; address participants risks, needs and behaviors; and support participant success In both prison and community based programming as well as re-entry.

On September 3, 2021, Plaintiff requested a religious exemption from the vaccine requirement, which Defendant Department of Corrections ("DOC") granted on September 21, 2021. However, in its letter granting the exemption, Defendant DOC informed Plaintiff that in his role and in light of the increased transmission of the COVID-19 virus at the time, his unvaccinated status posed "a significant risk of substantial harm" in the workplace. Defendant DOC determined the only reasonable accommodation was reassignment, which it encouraged Plaintiff to apply for with the understanding reassignment positions are limited to vacant, funded positions for which the employee is qualified. This could include a lateral position or position with a lower salary or job class. In the same letter, Defendant DOC also offered to meet with Plaintiff to discuss the decision.

On October 13, 2021, Plaintiff sent Defendant DOC an email demanding it

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 3

reconsider his request and accommodation. He requested Defendant DOC either allow him to continue working with masking and testing or place him on paid administrative leave until Defendant DOC could find a way to modify his duties to work from home until the pandemic subsided. He did not request a meeting with Defendant DOC staff.

On October 18, 2021, Defendant DOC terminated Plaintiff because it could not accommodate his religious exemption in his DOC role. Plaintiff alleges DOC failed to meaningfully engage in interactive discussions regarding job functions and potential accommodations in violation of Title VII and WLAD, and other employees were accommodated but he was not.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and received his right to sue letter on October 20, 2022. Plaintiff also filed a tort claim with Washington State on December 13, 2022, as required by Wash. Rev. Code § 4.92.100. His administrative remedies were exhausted.

In this matter, he seeks declaratory relief under Title VII; economic damages including for lost wages, benefits, retirement, and medical coverage; compensation for past and future non-pecuniary losses resulting from pain and suffering, emotional distress, inconvenience, mental anguish, loss of enjoyment, and humiliation; attorney's fees and costs; general and special damages; and pre-judgment interest.

## MOTION STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.    Legal Standard**

Title VII, 42 U.S.C. § 2000e(j), requires accommodation for religious exemptions:

> (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

Under Title VII, plaintiffs can seek recovery under theories of disparate treatment and failure to accommodate. 42 U.S.C. § 2000e. In this case, Plaintiff is pursuing a failure to accommodate claim.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

Under both Title VII and WLAD, the elements for a failure to accommodate claim are: "(1) [plaintiff] had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004); *see Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481, 500–01 (2014). If the plaintiff establishes a prima facie case for failure to accommodate, then the burden shifts to the defendant to show they engaged in good faith efforts to reasonably accommodate but such accommodation would result in undue hardship. *See Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

The analysis for undue hardship is no longer more than a *de minimis* cost. *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023). An employer must "reasonably accommodate an employee's practice of religion, not merely [] assess the reasonableness of a particular possible accommodation or accommodations." *Id.* at 473. This is a fact-specific inquiry to determine if "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 468, 470. The court must look to relevant factors like the nature, size, and operating cost of the employer when compared to the proposed accommodations. *Id.* at 470–71.

**B.     Analysis**

Plaintiff established a prima facie case for failure to accommodate under Title VII and WLAD by satisfying the *Peterson* factors: (1) he asserted he had a bona fide religious belief that prohibited him from obtaining the COVID-19 vaccine; (2) Defendant DOC granted his request for exemption from the State-wide vaccine requirement for government employees; (3) but Defendant DOC terminated Plaintiff because it could not accommodate his religious exemption. *See Peterson*, 358 F.3d at 606.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

However, Defendant DOC satisfied its burden by proving it could not reasonably accommodate Plaintiff because, despite good faith efforts to accommodate him, Plaintiff did not engage in discussions with Defendant DOC, and Defendant DOC could not find a reasonable accommodation that did not result in undue hardship. *See Tiano*, 139 F.3d at 681.

At the time of Plaintiff's request, the State had determined the spread of COVID-19 was surging despite masking and testing protocols—accommodations Plaintiff requested. Plaintiff also requested to stay in his position while working remotely. However, Plaintiff's duties required in-person work because he managed a special inmate program in the maximum-security unit without access to internet for virtual coursework. He was in close proximity to inmates, increasing their risk of exposure to the virus. He also worked in an office by an open-air cubicle area, putting other staff at risk of infection. Further, Plaintiff's alternate request for paid administrative leave until the end of the pandemic was not reasonable. Paying for an employee indefinitely would have resulted in undue hardship for Defendant DOC because the burden of granting the accommodation would have resulted in substantial increased costs, including for hiring another employee qualified to work with high-risk inmates and paying both salaries during an already challenging economic period for the State. *See Groff*, 600 U.S. at 468. Finally, Defendant DOC offered to meet with Plaintiff, but Plaintiff did not exercise this option.

Defendant evaluated reasonable accommodations, and Plaintiff failed to engage in the interactive process. Defendant does not have to alter the functions of the job to satisfy an accommodation request under Title VII or WLAD. There are no issues of material fact in this matter, and the Court found Defendants are entitled to judgment as a matter of law.

//
//
//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 7

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

2. The District Court Clerk is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close** the file.

**DATED** this 2nd day of January 2025.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 8